BROWN GAVALAS & FROMM LLP
*Attorneys for Plaintiff*
DANMAR LINES LTD.
60 East 42nd Street, Suite 4600
New York, New York 10165
(212) 983-8500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DANMAR LINES LTD.,

    Plaintiff,

-against-

MSC MEDITERRANEAN SHIPPING
COMPANY S.A.,

    Defendant.
------------------------------------------------------------X

Case No. 22 CV 10073

**COMPLAINT**

  Plaintiff, DANMAR LINES LTD. ("Danmar"), by its attorneys, Brown Gavalas & Fromm LLP, as and for its Complaint against Defendant, MSC MEDITERRANEAN SHIPPING COMPANY S.A. ("MSC"), alleges upon information and belief as follows:

### JURISDICTION, THE PARTIES, AND VENUE

  1. This is a case of admiralty and maritime jurisdiction within the meaning of 28 U.S.C. § 1333 and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

  2. At all relevant times mentioned herein, Plaintiff Danmar was and still is a corporation organized and existing under the laws of Switzerland with its principal place of business in Basel, Switzerland, and was and is engaged in the business of non-vessel operating common carrier ("NVOCC").

3. At all relevant times mentioned herein, MSC MEDITERRANEAN SHIPPING COMPANY S.A. ("MSC") was and is a foreign corporation registered in Switzerland with its principal place of business at 12-14 chenin Rieu, CH-1208, Geneva, Switzerland and within this district at 420 Fifth Avenue, New York, NY 10018.

4. At all relevant times, MSC was a vessel-operating common carrier of goods for hire.

5. MSC has consented to jurisdiction in the State of New York by virtue of its agreement to a choice of forum clause that provides that in cases of ocean transport to or from the United States "suit shall be filed exclusively in the United States District Court, for the Southern District of New York and U.S. law shall exclusively apply."

6. Venue is proper in this Districts because MSC is subject to personal jurisdiction in this District with respect to this action and the relevant contracts of carriage call for the exclusive jurisdiction of this Court.

## FACTS

7. Danmar is a non-vessel operating common carrier that, on behalf of DHL Global Forwarding and related entities, arranges for the shipment and ocean transport of goods from one location to another location, including from Europe to the United States.

8. Danmar sues herein on its own behalf and as agent and trustee for and on behalf of DHL Global Forwarding (Italy) SPA and DHL Global Forwarding, and any other entity that may now have or hereafter acquire an interest in this action.

9. Danmar acts as an intermediary in the transportation of goods and contracts with vessel operating and owning common carriers like MSC to physically move the goods in ocean and land-based transportation.

10. As NVOCC, Danmar issued its express sea waybill no. PMFA00254 dated November 2, 2021 to La Frutticola SNC and/or Trucco, Inc., as shippers and consignees respectively, for a shipment of 1510 bags of Sanificate Fesh Chestnuts packed in a 40-foot refrigerated container for ocean transport from Naples, Italy to New York. (the "Shipment").

11. Danmar, in turn, contracted with MSC as a vessel operating common carrier and/or slot charterer, for the actual transport of the Shipment aboard the M/V MSC MARIA ELENA (the "Vessel").

12. As a vessel operating common carrier, MSC issued its own Sea Waybill no. MEDUIG145952 dated November 2, 2021 to Danmar's affiliated entities DHL Global Forwarding (Italy) SPA and DHL Global Forwarding named on MSC's sea waybill, respectively, as shipper and consignee of the Shipment.

13. On or about November 2, 2021, at the port of Naples, Italy, the Shipment was loaded on board the Vessel in good order and condition and without any exceptions taken as to the condition of the Shipment.

14. Upon the Vessel's arrival in at the discharge port in New York on or about November 28, 2021, the Shipment was alleged to have been found damaged and not in the same good order and condition as when delivered to MSC at the port of loading in Naples, Italy.

## FIRST CAUSE OF ACTION

**(Indemnification and/or Contribution)**

15. Danmar reiterates, repeats, and realleges the foregoing paragraphs numbered 1 through 14, inclusive, with the same force and effect as if fully set forth herein.

16. On or about the dates stated in Paragraphs 10 and 12 of this Complaint, Danmar entered into one or more contracts with MSC, pursuant to which MSC agreed to properly and

carefully load, stow, secure, and transport the Shipment from the port of loading to the port of discharge.

17.    MSC's bill of ladings and service agreements with Danmar constitute valid and binding contracts under the law.

18.    If it is determined that Danmar's customer's Shipment was damaged, which is denied, and it is determined that Danmar is responsible for said losses and/or damages as NVOCC, such losses and/or damages were due to the wrongful acts or omissions, including breach of contract, breach of express or implied warranty, or other misconduct of MSC acting as vessel owning and operating common carrier.

19.    The alleged damage to or loss of the Shipment was not caused or contributed to by any act, omission, fault, or neglect on the part of Danmar, or its customers, its agents, servants, or employees.

20.    By reason of the alleged damage to or loss of the Shipment, Danmar and its customers have suffered damages and exposure to claims, including damage to or loss of the Shipment.

21.    If it is determined that Danmar is responsible for the alleged damage or loss of its Shipment and/or any other losses of any nature whatsoever, which is denied, then all of Danmar's damages and losses as aforesaid are directly attributable to and caused by the aforesaid wrongful acts and omissions or other misconduct of MSC and/or its agents acting on its behalf, without any fault of Danmar or its agents contributing thereto; and therefore, MSC should be held liable to Danmar for all liability, losses, and damages arising therefrom, including legal fees and disbursements incurred in defense of all claims.

22. In the event that Danmar is nevertheless held liable to any other party in the United States or abroad arising out of or relating to damage to the Shipment, said liability being expressly denied by Danmar, then such liability derives in whole, or in part, from the aforesaid wrongful acts or omissions or other misconduct of MSC, or its officers, agents, servants, and employees and, therefore, Danmar should be granted full recovery over and against, and be indemnified by, or secure contribution from, MSC for all sums so recovered against Danmar, including legal fees, costs and expenses.

## SECOND CAUSE OF ACTION

**(Breach of Contract and of Duties under COGSA, 46 U.S.C. §30701)**

23. Danmar reiterates, repeats, and realleges the foregoing paragraphs numbered 1 through 22, inclusive, with the same force and effect as if fully set forth herein.

24. MSC's duties included those of a vessel operating common carrier in accordance with the COGSA §4(5), Ch. 229, 49 Stat. 1207 (1936), reprinted in note following 46 U.S.C. § 30701.

25. In consideration for specified fees and charges, MSC, which was aware of the nature of the Shipment, contracted to carry the Shipment from the place of receipt at the port of loading to the place of delivery at the port of discharge as stated in this Complaint, and to provide other transportation-related services including, but not limited to, the receipt, loading, stowage, and care of the Shipment.

26. The Shipment was in good order and condition when it was tendered to MSC or entities acting on its behalf, at the port of loading as stated in this Complaint.

27. MSC, or entities acting on its behalf, loaded and stowed the Shipment at or near the place of receipt at the port of loading and issued a clean bill of lading.

28. At some time during the voyage across the Atlantic Ocean to the United States, while the Shipment was aboard the Vessel and in the custody and care of MSC, the Shipment was allegedly damaged.

29. The alleged aforesaid damage was caused by MSC's breaches of contract and duties under COGSA and the general maritime law, as well as the MSC's negligent failure to properly load, stow, carry, protect, store, care for, and deliver the Shipment, and the unseaworthiness of the Vessel.

30. As a proximate result of the foregoing, Danmar has sustained or will sustain damages in the amount of $165,755.00, or in an amount yet to be determined, no part of which has been paid although duly demanded.

## THIRD CAUSE OF ACTION

### (Breach of Warranties and Nondelegable Cargoworthiness Duties)

31. Danmar reiterates, repeats, and realleges the foregoing paragraphs numbered 1 through 30, inclusive, with the same force and effect as if fully set forth herein.

32. The Vessel was at all material times an ocean-going containership with fixed cell guides and was designed to carry the Shipment in truck-size intermodal containers, including those requiring electric power for temperature control which serve as extensions of the holds of the vessel.

33. MSC's statutory duties, contractual obligations, and warranties under the general maritime law, included the non-delegable duty to provide a seaworthy and cargoworthy ocean shipping vessel fit in every respect to carry the Shipment which MSC contracted to transport aboard the Vessel.

34. MSC, or entities acting on its behalf, were at all material times responsible for the maintenance, upkeep, loading, and stowage of the Vessel while the Shipment was in its custody and control.

35. MSC, or entities acting on its behalf, was also responsible for the pre-voyage receipt, inspection, and preparation of the Vessel for the ocean voyage.

36. If it is determined that the Shipment was damaged during transport aboard the Vessel, the damage is a result of MSC's failure in making the Vessel seaworthy prior to and in during the course of the voyage.

37. MSC, or entities acting on its behalf, was at all material times responsible for the maintenance, upkeep, loading, stowage, and operation of the Vessel while the Shipment was in its custody and control.

38. If it is determined that the Shipment was damaged during carriage onboard the Vessel, the alleged damage is a result of MSC's failure in making the Vessel seaworthy prior to and during the course of the voyage.

39. If it is determined that the Shipment was damaged during carriage onboard the Vessel, the alleged damage was caused in whole or in part by mishandling of the Shipment by MSC, or entities acting on its behalf, during the subject ocean transportation.

40. Accordingly, MSC is liable to Danmar as a result of the breaches of its non-delegable duties and breaches of warranties with respect to the Shipment.

41. As a proximate result of the foregoing, Danmar, and those on whose behalf it sues, has sustained or will sustain damages in the amount of $165,755.00, or in an amount yet to be determined, no part of which has been paid although duly demanded.

## **FOURTH CAUSE OF ACTION**

### **(General Negligence)**

42. Danmar reiterates, repeats, and realleges the foregoing paragraphs numbered 1 through 41 inclusive, with the same force and effect as if fully set forth herein.

43. The alleged damage to or loss of the Shipment was caused in whole, or in part, by MSC's failure to properly care for, communicate and carry out all relevant instructions concerning the transport of the Shipment.

44. The alleged damage to the Shipment was due to the want of care, design, neglect, fault, privity, negligence, fault, lack of care, gross negligence, willful, wanton, and reckless misconduct of MSC. Said conduct includes, but is not limited to, mishandling of the Shipment, which caused and/or contributed to the alleged damage to or loss of the Shipment and the resulting damage to Danmar.

45. If it is determined that the Shipment was damaged or lost, the resulting losses, damages, and expenses aforesaid were directly caused or attributable to the aforesaid failures and breach of duty of MSC and, therefore, MSC should be held liable to all parties who have made claims against Danmar in this litigation.

46. As a proximate result of the foregoing, Danmar, and those on whose behalf it sues, has sustained damages in the amount of $165,755.00, or in amount yet to be determined, no part of which has been paid although duly demanded.

**WHEREFORE**, Plaintiff Danmar prays that:

1. Judgment be entered in favor of Danmar as against MSC in the amount of $165,755.00, or as may be assessed against Danmar after trial;

2. MSC be found liable for indemnity to Danmar and for all such sums for which Danmar may be found liable, including attorneys' fees, interest, costs, and disbursements;

3. Judgment be entered in favor of Danmar as against MSC for contribution toward any losses or damages suffered by Danmar including attorneys' fees, interest, costs, and disbursements;

4. Judgment be entered in favor of Danmar for such other and further relief as this Court deems just and proper.

Dated: New York, New York
       November 28, 2022

                By:    S/ Peter Skoufalos
                      Peter Skoufalos (PS-0105)
                      BROWN GAVALAS & FROMM LLP
                      *Attorneys for Plaintiff*
                      DANMAR LINES LTD.
                      60 East 42nd Street, Suite 4600
                      New York, New York 10165
                      (212) 983-8500
                      pskoufalos@browngavalas.com